# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL P. WHITE ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12-cv-3136 |
| ) | |
| J. FOLEY and T. QUINN, officers of the Chicago ) | Judge Sharon Johnson Coleman |
| Police Department, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael P. White filed a complaint alleging Defendants James Foley and Timothy Quinn wrongfully entered his home and wrongfully arrested him without probable cause in violation of the Fourth Amendment. Defendants now move for summary judgment, arguing they had probable cause to arrest White or at least arguable probable cause sufficient for qualified immunity. They also assert White's claim for wrongful entry is barred by collateral estoppel. The Court grants in part and denies in part the motion for summary judgment.

**Background**

The following facts are undisputed except where a dispute is noted.[1] On April 3, 2010 Detective Luis Otero of the Chicago Police Department was assigned to assist in the investigation of an armed robbery that occurred on April 2, 2010 at La Fiesta Flower Shop. (Dkt. 91 ¶¶ 4, 7.) Adriana Mateo was the only employee working at the flower shop at the time of the robbery. (*Id.* ¶ 12.) She gave a statement to the police which provided that a white male wearing a black White Sox jersey, a black baseball cap, and blue jeans entered the store, displayed a knife, and told Mateo to open the register. (*Id.* ¶¶ 9, 10.) Mateo complied and the offender took approximately $160.00 in cash and left the

---

[1] Throughout White's Rule 56 response to Foley and Quinn's statement of facts, White contends he is "unaware" of certain facts. However, he fails to cite to any evidence that calls the proffered facts into question. Because merely asserting ignorance to a fact proffered by the movant is not a proper dispute of a material fact under Rule 56, these facts are considered undisputed.

store. (*Id.* ¶ 10, 12.) Using Mateo's description and video footage from the security cameras, Otero searched a law enforcement database for individuals matching the physical description of the robber and identified White as a suspect. (*Id.* ¶¶ 15, 16.)

According to the defendants, Otero conducted a photo array with Mateo on April 14, 2010 and she identified White as the robber. (*Id.* ¶ 19.) The defendants also assert that after White was arrested on April 23, Mateo identified White again in an in-person lineup, again conducted by Otero. (*Id.* ¶ 26.) White disputes that the photo array occurred before his arrest because Mateo in her deposition testified that she was only asked to identify White after he was "caught" and that she participated in the photo array and the in-person lineup during a single visit to the police station. (Dkt. 98 ¶¶ 36-40.)

On April 23, Foley and Quinn were told by a fellow officer that Mateo had identified White as the robber and were assigned to go speak to White. (Dkt. 91 ¶ 20.) Prior to going to speak with White, Foley and Quinn reviewed an incident report containing Mateo's previous statements to the police describing the robbery and reviewed White's photograph and criminal history report. (*Id.* ¶ 21.) Foley and Quinn contend that when they arrived at White's apartment, his wife invited the officers inside and led them to the bedroom where White was located. (*Id.* ¶ 24.) Foley and Quin observed in plain view clothing matching those of the robber on the day of the robbery and arrested White and seized his clothing. (*Id.*)

White disputes that his wife gave the officers consent to enter the apartment. (*Id.* ¶ 25.) In White's criminal case, he filed a motion to suppress, arguing that Foley and Quinn had unlawfully entered his home and therefore the seized clothing should be suppressed. (*Id.* ¶ 28.) White's wife testified at the hearing that she did not give Foley and Quinn consent to enter the apartment. (*Id* ¶ 29.) Foley testified to the contrary. (*Id.* ¶ 32.) The judge denied the motion to suppress and White

thereafter pled guilty to armed robbery and was sentenced to forty-five years in the custody of the Illinois Department of Corrections. (*Id.* ¶¶ 34-35.)

**Legal Standard**

Summary judgment is appropriate if the evidence shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The party seeking summary judgment has the "initial responsibility" to show that there is no genuine issue of material fact, *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986), but the Court must view all facts and make all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The Court may enter summary judgment only if the record as a whole establishes that no reasonable jury could find for the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000).

**Discussion**

*Qualified Immunity for False Arrest*

Officers Foley and Quinn assert they had probable cause to arrest White based on the incident report they reviewed that described the robbery and based on their fellow officer's statement that Mateo had identified White as the robber. White argues that Mateo's deposition testimony creates a factual dispute as to whether her identification of White occurred before or after White was arrested and therefore the question of probable cause cannot be resolved on summary judgment.

Because a single identification from a credible eyewitness can supply probable cause, *Hart v. Mannina*, 798 F.3d 578, 587 (7th Cir. 2015), it was reasonable for Foley and Quinn to believe probable cause existed upon hearing Mateo had identified White. If probable cause did not in fact exist because Otero fabricated the pre-arrest identification, Foley and Quinn are nonetheless entitled to qualified immunity because their mistaken belief that probable cause existed was reasonable. *See Carmichael v. Vill. of Palatine, Ill.,* 605 F.3d 451, 459 (7th Cir. 2010). Police officers are entitled to

3

qualified immunity when they reasonably rely on information provided by fellow law enforcement officials, *Spiegel v. Cortese*, 196 F.3d 717, 726 (7th Cir. 1999), and there is nothing in the record to suggest Foley and Quinn should have questioned the veracity of the information they were provided regarding the eyewitness identification.

*Collateral Estoppel*

Foley and Quinn also argue they are entitled to summary judgment on White's claim for unlawful entry because he is collaterally estopped from re-litigating the issue of consent, which was already decided at the hearing on his motion to suppress. However, Illinois appellate courts have found that a ruling on a motion to suppress does not have a preclusive effect where the defendant pleads guilty because the defendant lacks an opportunity to appeal. *People v. Griffin,* 117 Ill.App.3d 177, 181(1983); *People v. Stiles,* 95 Ill.App.3d 959, 964(1981). Courts in this district have applied the same rule in Fourth Amendment §1983 cases. *See e.g., Kyle v. Patterson,* No. 95 C 137, 1996 WL 420277, at *1 (N.D. Ill. July 25, 1996)(Gettleman, J.) *Mars v. Mormann*, No. 92 C 7941, 1993 WL 211368, at *3 (N.D. Ill. June 15, 1993) (Williams, J.) Persuaded by this line of cases, the Court applies the rule here. White is not collaterally estopped from litigating whether Foley and Quinn had consent to enter his apartment.

For the reasons stated above, the Court grants in part and denies in part Foley and Quinn's motion for summary judgment [89].

IT IS SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED: August 29, 2016